## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | In Proceedings |
| | ) | Under Chapter 13 |
| JOE SHANE HILL, | ) | |
| THERE CECILE HILL, | ) | |
| | ) | |
| Debtors, | ) | |
| | ) | BK 10-32552 |
| JOE SHANE HILL, | ) | |
| THERE CECILE HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | ADV 13- |
| BANK OF AMERICA F/K/A BAC | ) | |
| HOME LOANS SERVICING, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

COME NOW the Plaintiffs, Joe & Therese Hill, by and through their attorneys,

the Law Offices of Mueller & Haller, L.L.C., and for their for Declaratory Judgment state

as follows:

1.     That on September 30, 2010, the Plaintiffs filed for relief under Chapter

13 of the Bankruptcy Code.

2.     That this Court has jurisdiction over this matter pursuant to 28 U.S.C. §

157(b)(1).

3.     That this is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A), (b)(2)(K)

and (b)(2)(O).

4.     That venue is proper in this Court pursuant to 28 U.S.C. § 1409.

5.    That at the time of filing, the Defendant had a mortgage on Plaintiffs' real estate.  The mortgage was included on Schedule D of the Plaintiffs' bankruptcy petition with a debt of $146,000.00, which included mortgage arrears of $7,000.00, for account number ending in 1994.

6.    That on September 30, 2010, the Debtors filed their Chapter 13 Plan, which provided for the Chapter 13 Trustee to make a monthly mortgage payment of $921.77 beginning with the payment due October 2010.  Further, said Plan provided for the Chapter 13 Trustee to cure the mortgage arrears of $7,000.00.

7.    That on December 15, 2010, Attorney Joes Moreno of Codilis & Associates filed an Entry of Appearance on behalf of BAC Home Loans Servicing.

8.    That on December 15, 2010, Attorney Joes Moreno of Codilis & Associates filed Proof of Claim #14-1 on behalf of BAC Home Loans Servicing.  Said Proof of Claim was filed in the amount of $142,355.41, which included a mortgage arrearage of $6,870.44.  Further, said Proof of Claim indicated that the monthly mortgage payment was $921.77 beginning October 2010.

9.    That on February 16, 2011, the Debtors filed their First Amended Chapter 13 Plan, which provided for the Chapter 13 Trustee to make a monthly mortgage payment of $921.77 beginning with the payment due October 2010.  Further, said Amended Plan provided for the Chapter 13 Trustee to cure the mortgage arrears of $7,000.00.

10.     That on March 10, 2011, the Court entered the Order Confirming First Amended Chapter 13 Plan.

11.     That on January 19, 2012, the Plaintiffs advised counsel that a representative of the Defendant advised the Plaintiffs that the Chapter 13 Trustee was behind in mortgage payments and that the Defendant was putting Trustee payments into an escrow account instead of applying the payments to the amounts owed.  It should be noted that there is no escrow account associated with the mortgage loan as the Plaintiffs pay the real estate taxes and insurance themselves.

12.     That on January 25, 2012, Debtors' counsel sent a letter to the Defendant. Said letter was a "qualified written request" under the Federal Servicer Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e).

13.     That on February 29, 2012, Debtors' counsel received a letter, dated February 28, 2012, from the Defendant.  Said letter advised that the Defendant had received the January 25, 2012 letter on January 30, 2012 and a response to said letter when the Defendant completed its investigation.

14.     That on March 27, 2012, Mark Morgan, a representative of the Defendant, left a message for Plaintiffs' counsel's staff requesting authorization to speak with the Plaintiffs.

15.     That on March 27, 2012, Plaintiffs' counsel's staff faxed a letter to the Defendant authorizing the Defendant to speak with the Plaintiffs for the

sole purpose of discussing and obtaining information for possible loss mitigation options.

16.    That on April 24, 2012, received a letter, dated April 23, 2012, from Louise Bowes of Blank Rome L.L.P., counsel for the Defendant.  Aid letter.  Said letter was a response to the January 25, 2012 letter and contained an explanation of some charges not included in the payment history and a payment history for February 2007 through April 2012.  Said payment history indicated that it had been prepared on April 12, 2012.

17.    That on June 8, 2012, Plaintiffs' counsel's staff contacted the St. Clair County, Illinois Treasurer's Office and confirmed that the real estate taxes for 2008, 2009, and 2010 had been paid by the Plaintiffs.

18.    That on June 19, 2012, the Plaintiffs advised counsel that their property suffered hail damage in April 2012 and that the insurance provider, State Farm, had prepared a repair estimate and issued a check consistent with the estimate.  Further, the Plaintiffs advised that the Defendant wanted the insurance check sent to them so they could make the appropriate distributions.  The Plaintiffs advised that Mr. Hill wanted to complete the repairs himself since this is the type of work he did for a living.

19.    That on June 28, 2012, Plaintiffs' counsel contacted Jose Moreno of Codilis & Associates, counsel for the Defendant, and left a message regarding the hail damage and repairs needed.

20.    That on June 28, 2012, Plaintiffs' counsel spoke with Jose Moreno of Codilis & Associates, counsel for the Defendant, regarding the hail

damage and repairs needed.  Attorney Moreno advised that he would pass the information along to his client.

21.     That on July 10, 2012, Plaintiffs' counsel received a message from Jose Moreno of Codilis & Associates, counsel for the Defendant, regarding the hail damage and repairs needed.  Attorney Moreno's message advised counsel to have the Plaintiffs contact the Defendant at 1-800-669-6076 option 2.

22.     That on July 16, 2012, the Plaintiffs advised counsel that the Defendant would not okay the Plaintiffs making the repairs to the property since Mr. Hill was not a licensed contractor.

23.     That on July 17, 2012, the Plaintiffs provided counsel with a letter, dated July 9, 2012, received from the Defendant.  Said letter advised the Defendant had been advised the Plaintiffs' property had sustained damage and insurance proceeds had been insured by the Plaintiffs' insurance provider.  Said letter stated, "According to your loan terms, the insurance proceeds must be used to either restore or repair the property, provided that such restoration or repair is economically feasible and your lender's security is not lessened hereby, or to be applied to the principal balance of the loan."  Further, said letter stated "**If your mortgage is current and has not been 30 days or more delinquent in the past 12 months and the insurance check is $10,000 or less or under 20% of your total claim amount**, it may be possible for us to simply return the check to you with our endorsement."

24.     That on July 24, 2012, the Plaintiffs advised counsel that the Defendant would not okay the Plaintiffs making the repairs to the property since Mr. Hill was not a licensed contractor.

25.     That on July 30, 2012, Plaintiffs' counsel sent an e-mail to Attorneys Jose Moreno and Joel Fonferko of Codilis & Associates advising of the hail damage, the insurance proceeds, and the Plaintiffs' desire for Mr. Hill to complete the repairs himself.  Further, said e-mail requested assistance in getting the Defendant to release the insurance funds.

26.     That on July 31, 2012, Attorney Jose Moreno of Codilis & Associates, counsel for the Defendant, responded to the July 30, 2012 e-mail and advised that his client had advised the Plaintiffs that Mr. Hill will not be able to complete the repairs himself.  Further, Attorney Moreno requested the insurance check be endorsed and mailed to his client along with the Adjuster's Report, a copy of the contractor's bid, the contractor's W-9 form, and a copy of the contractor's license.

27.     That on July 31, 2012, Plaintiff's counsel responded to Defendant's counsel and advised that Mr. Hill does construction work for a living, requested as to if the policy regarding repair work was in writing somewhere in the mortgage or note for the Plaintiffs' records, and requested if the insurance proceeds could be applied to the principal balance should the repairs not be done.

28.     That on July 31, 2012, Defendant's counsel responded that he would follow up with his client regarding Mr. Hill's reasons for wanting to do the

repairs himself and that it may be possible to apply the insurance proceeds to the principal balance in certain specific circumstances.

29.    That on August 8, 2012, Plaintiffs' counsel sent an e-mail to Jose Moreno, counsel for the Defendant, to follow up on the status of the insurance work and proceeds.

30.    That on August 13, 2012, Jose Moreno, counsel for the Defendant, responded to the August 8, 2012 e-mail and advised he would follow up with his client.

31.    That on August 30, 2012, Jose Moreno, counsel for the Defendant, sent an e-mail to Plaintiffs' counsel and advised the Defendant has consented to allowing Mr. Hill to complete the repairs himself, but the Plaintiffs would not be reimbursed until the repairs were completed and they would only be reimbursed for supplies not labor.  Further, Defendant's counsel advised the Plaintiffs should keep all receipts.  Attached to said e-mail was a letter, dated August 3, 2012, received from the Defendant.  Said letter advised the Defendant had been advised the Plaintiffs' property had sustained damage and insurance proceeds had been insured by the Plaintiffs' insurance provider.  Said letter stated, "According to your loan terms, the insurance proceeds must be used to either restore or repair the property, provided that such restoration or repair is economically feasible and your lender's security is not lessened hereby, or to be applied to the principal balance of the loan."   Further, said letter stated "**If your mortgage is current and has not been 30 days or more delinquent in the past 12**

**months and the insurance check is $10,000 or less or under 20% of your total claim amount**, it may be possible for us to simply return the check to you with our endorsement."

32.    That on September 24, 2012, Plaintiffs' counsel received a letter, dated September 22, 2012, from the Defendant.  Said letter requesting additional information to determine if the mortgage was eligible for the Home Affordable Modification Program.

33.    That on September 24, 2012, the Plaintiffs advised counsel that if the Defendant will not reimburse him for Mr. Hill's labor on the repairs made to the house then they want those funds applied to the principle balance of the mortgage.

34.    That on September 26, 2012, Mr. Green, a representative of the Defendant, left a message for Plaintiffs' counsel.

35.    That on September 26, 2012, Plaintiffs' counsel sent an e-mail to Jose Moreno, counsel for the Defendant, advising that a Mr. Green of the Defendant had left a message for her, but that the call was not returned as the Defendant has counsel.  Further, Plaintiff's counsel inquired as to if the insurance proceeds could be applied to the principal balance and something in writing stating this as the hail damage was minimal and was not needed to maintain the integrity or value of the home.

36.    That on September 26, 2012, Jose Moreno, counsel for the Defendant, responded that he does not usually deal with the insurance claims department and that he had no objection to the Plaintiffs or Plaintiffs'

counsel dealing with the insurance department of the Defendant directly. Further, he advised he would forward the information to his contact.

37.     That on October 3, 2012, the Plaintiffs advised counsel that "Megan," a representative of the Defendant's insurance department, told him that it would not be a problem to pay the Plaintiffs for Mr. Hill's labor or materials.

38.     That on October 25, 2012, Plaintiffs' counsel sent an e-mail to Jose Moreno, counsel for the Defendant, advising that the Plaintiffs had spoken to the Defendant and was advised that Mr. Hill would be paid for his labor on the repairs so the Plaintiffs again wanted Mr. Hill to complete the repairs providing he would be reimbursed for his labor and repair materials.

39.     That on October 25, 2012, Jose Moreno, counsel for the Defendant, responded that, per the terms of the mortgage, there would need to be some type of written agreement for the insurance funds to be applied to the principal balance.

40.     That on October 25, 2012, Plaintiffs' counsel responded that the Defendant would not give the Plaintiffs anything in writing stating that if Mr. Hill does the work and repairs that the Defendant will release the insurance funds to him.

41.     That on October 25, 2012, Jose Moreno, counsel for the Defendant, responded that he would forward the information to the Defendant.

42.     That on October 31, 2012, Jose Moreno, counsel for the Defendant, sent an e-mail to Plaintiffs' counsel advising that the Defendant's claims department has advised that the insurance funds would only be released prior to completion of the repairs if a licensed contractor was involved, but if the Plaintiffs complete the repairs and save the receipts, the Defendant would send an inspector to verify the work is completed so the funds could be released to the Plaintiffs.  Attorney Moreno further advised that a letter would need to be sent to the Defendant regarding their choice that should also include the property address and loan number once each page with the signatures of both Plaintiffs.

43.     That on December 3, 2012, the Plaintiffs advised counsel that they want the insurance proceeds applied to the principle balance of the mortgage.

44.     That on December 13, 2012, Plaintiffs' counsel sent an e-mail to the Staff Attorney for the Chapter 13 Trustee advising of the insurance proceeds and the Plaintiffs desire for the insurance proceeds to be applied to the principal balance of the loan.

45.     That on December 14, 2012, the Chapter 13 Trustee's Staff Attorney responded to the December 13, 2012 e-mail requesting additional information needed.

46.     That on December 14, 2012, Plaintiffs' counsel responded with some additional information.

47.     That on December 14, 2012, the Chapter 13 Trustee's Staff Attorney responded that she would have no objection to applying the insurance

proceeds to the principal balance if verification stating that is how the funds were applied could be obtained from the Defendant.

48.    That on December 21, 2012, Plaintiffs' counsel's staff sent an e-mail to the Chapter 13 Trustee's Staff Attorney with a copy of the letter received from the Defendant's counsel stating, "According to your loan terms, the insurance proceeds must be used to either restore or repair the property, provided that such restoration or repair is economically feasible and your lender's security is not lessened hereby, or to be applied to the principal balance of the loan."

49.    That on December 26, 2013, the Chapter 13 Trustee's Staff Attorney responded to the December 21, 2012 e-mail and stated that she would need something more specific because she was concerned that it would not be applied to the backend of principal, but would instead be applied to pay the Plaintiffs ahead on the mortgage or applied to the pre-petition arrearage.

50.    That on January 14, 2013, Plaintiffs' counsel's staff sent an e-mail to Jose Moreno, counsel for the Defendant.  Attached to said e-mail was a letter to the Defendant requesting the insurance proceeds in the amount of $9,600.16 be applied to the principal balance of the Plaintiffs' mortgage loan.  Further, said e-mail requested the Defendant provide documentation showing how the insurance funds were applied and the next mortgage payment due date.

51.    That on January 14, 2013, Jose Moreno, counsel for the Defendant, responded that his understanding was that the Plaintiffs wanted to be reimbursed for materials and labor and requested clarification of the matter.

52.    That on January 15, 2013, Plaintiffs' counsel responded to the January 14, 2013 e-mail and advised that the Plaintiffs had changed their minds and now would like the insurance funds applied to the principal balance.

53.    That on January 15, 2013, Jose Moreno, counsel for the Defendant, responded that he had forwarded the Plaintiffs' request to the Defendant.

54.    That on January 16, 2013, Plaintiffs' counsel's staff sent an e-mail to Jose Moreno, counsel for the Defendant, inquiring as to where the insurance proceeds should be sent.

55.    That on January 16, 2013, Jose Moreno, counsel for the Defendant, responded that he would contact his client for the information.

56.    That on January 22, 2013, Jose Moreno, counsel for the Defendant, sent an e-mail to Plaintiffs' counsel's staff with the address to which the insurance proceeds should be mailed.

57.    That on February 4, 2013, the Plaintiffs advised that they had sent the insurance proceeds to the Defendant.

58.    That on February 12, 2013, Plaintiffs' counsel's staff sent an e-mail to Jose Moreno, counsel for the Defendant advising that the insurance proceeds had been sent to the Defendant and requesting the Defendant provide documentation showing how the insurance funds were applied.

59.     That on February 12, 2013, Jose Moreno, counsel for the Defendant, responded that he would see what he could find.

60.     That on February 12, 2013, Jose Moreno, counsel for the Defendant, sent an e-mail to Plaintiffs' counsel's staff advising that the check had been received, but the letter attached was not legible.

61.     That on February 14, 2013, the Plaintiffs advised that they had contacted the Defendant regarding the insurance proceeds and were told the check had been received, but were unable to read the letter on how to apply the proceeds.

62.     That on February 15, 2013, Plaintiffs' counsel's staff sent a facsimile to the Defendant.  Attached to said facsimile was a letter signed by the Plaintiffs requesting the insurance proceeds in the amount of $9,600.16 be applied to the principal balance of the mortgage loan.

63.     That on February 25, 2013, Plaintiffs advised counsel that they contacted the Defendant and were told just to endorse the check and submit to the Defendant.

64.     That on February 27, 2013, Plaintiffs' counsel's staff sent an e-mail to Jose Moreno, counsel for the Defendant advising that letter regarding the application of insurance proceeds had been re-sent to the Defendant via fax and inquiring as to the status of the insurance proceeds and repairs.

65.     That on February 27, 2013, the Plaintiffs' counsel's staff contacted the Plaintiffs to advise an e-mail had been sent to the Defendant's counsel and to discuss the inspection required before application of the insurance

proceeds to the principal balance. The Plaintiffs advised that there was an inspection scheduled for March 4, 2013.

66.     That on February 27, 2013, the Plaintiffs' counsel contacted the Plaintiffs to advise the insurance funds can either go to repairs or to principal and that the Plaintiffs should allow the inspection.

67.     That on February 27, 2013, Jose Moreno, counsel for the Defendant, responded that the insurance proceeds would be held until the inspection was made.

68.     That on March 4, 2013, the Plaintiffs' contacted counsel staff to advise that the Defendant's inspector requested the Plaintiffs sign the incomplete inspection for so the inspector could complete the form later and advised that the Plaintiffs refused to sign the incomplete form.

69.     That on March 5, 2013, the Plaintiffs provided counsel with a copy of the incomplete Loss Draft Inspection.

70.     That on March 6, 2013, the Plaintiffs' counsel's staff advised the Plaintiffs that the insurance funds would be applied to the principal balance once the inspection was completed.

71.     That on March 6, 2013, the Plaintiffs' contacted counsel staff to advise that the Defendant's inspector refused to inspect the hail damage or complete the inspection form without the Plaintiffs signing the blank form first.

72.     That on March 11, 2013, the Chapter 13 Trustee's Staff Attorney sent an e-mail to Plaintiffs' counsel's staff inquiring as to the status of the insurance proceeds.

73.     That on March 12, 2013, Plaintiffs' counsel's staff responded to the March 11, 2013 e-mail and advised that the Plaintiffs were waiting for the inspection to be completed prior to the insurance proceeds being applied to the principal balance of the mortgage.

74.     That on April 12, 2013, the Plaintiffs provided counsel with a letter, dated February 5, 2013, received from the Defendant.  Said letter advised the Defendant had been advised the Plaintiffs' property had sustained damage and insurance proceeds had been insured by the Plaintiffs' insurance provider.  Said letter stated, "According to your loan terms, the insurance proceeds must be used to either restore or repair the property, provided that such restoration or repair is economically feasible and your lender's security is not lessened hereby, or to be applied to the principal balance of the loan."  Further, said letter stated "**If your mortgage is current and has not been 30 days or more delinquent in the past 12 months and the insurance check is $10,000 or less or under 20% of your total claim amount**, it may be possible for us to simply return the check to you with our endorsement."

75.     That the Plaintiffs request the Defendant apply the insurance proceeds in the amount of $9,600.16 be applied to the principal balance of the mortgage loan.

76.     That the Plaintiffs request the Defendant provide proof that the insurance

proceeds of $9,600.16 have been applied to the principal balance of the

mortgage loan.

WHEREFORE, the Plaintiffs pray this Honorable Court enter an Order for

Declaratory Judgment for the Defendant to apply the insurance proceeds in the amount

of $9,600.16 to the principal balance of the mortgage loan, for the Defendant to provide

proof that the insurance proceeds of $9,600.16 have been applied to the principal

balance of the mortgage loan, that the Defendant be ordered to pay all reasonable legal

fees and expenses incurred by the Plaintiffs' counsel, that Defendant not be allowed to

charge attorney's fees or costs for defending this adversary, and for such other relief as

the Court deems just and proper.


JOE & THERESE HILL,

By: /s/ William A. Mueller
William A. Mueller #06187732
James J. Haller #06226796
Rachel A. Hill #51818
Attorneys for the Plaintiffs
5312 West Main Street
Belleville, IL 62226
Phone (618) 236-7000